# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF TENNESSEE
### NASHVILLE DIVISION

| | | |
|---|---|---|
| ANTHONY PARKER, | ) | |
|     Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 3:22-cv-00063 |
| | ) | Judge Campbell / Frensley |
| HANKOOK TIRE MANUFACTURING | ) | Jury Demand |
| TENNESSEE, LP, | ) | |
|     Defendant. | ) | |

## REPORT AND RECOMMENDATION

### I.    INTRODUCTION AND BACKGROUND

This matter is before the Court upon Defendant's Motion to Dismiss pursuant to Fed. R. Civ. P. 12(b)(6). Docket No. 16. Defendant has contemporaneously filed a supporting Memorandum of Law arguing that Plaintiff's claims for negligence, slander, libel, defamation, race and age discrimination, and disability discrimination and retaliation should be dismissed for failure to state a claim upon which relief can be granted because:

1. Plaintiff's negligence claim is barred by the exclusive remedy provision of the Tennessee Workers' Compensation Act ("TWCA");

2. Plaintiff's defamation claim is brought under a statute that does not provide any federal cause of action for defamation, libel, or slander and Plaintiff's Amended Complaint fails to allege facts sufficient to establish the requisite elements of such claims under State law;

3. Plaintiff cannot establish his race and age discrimination claims because, other than stating his race and age, he has failed to allege a connection between his race or his age and any action by Defendant;

4. Plaintiff cannot establish his disability discrimination and retaliation claims because he has failed to plead that he is disabled, much less identify his alleged disability or protected activity, and Plaintiff failed to exhaust his administrative remedies for his Americans With Disabilities Act ("ADA") claims because he failed to include discrimination or retaliation claims under the ADA in his EEOC Charge and such claims could not reasonably be seen to grow out of his original charge and factual

allegation; and

5.      None of Plaintiff's claims satisfy the minimum pleading standards for plausibility set forth in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) such that Plaintiff's Amended Complaint has failed to plead viable causes of actions for any of his claims and this action should be dismissed.

Docket No. 17.

Plaintiff has filed a Response arguing that he makes no complaint of work-related injury and further arguing that he is not alleging violations of State law. Docket No. 20. Rather, Plaintiff asserts that he was retaliated against "after asking for status of internal racial complaint." *Id.* Plaintiff also argues that it is undisputed that Defendant's Human Resources Manager fired him while he was out of work under a doctor's care and when the "doctor refused to release Plaintiff to return to work." *Id.* Plaintiff maintains that "Defendant cannot refute effectively with rules in company handbook any violation or a law the Plaintiff violated as a defense," such that the instant Motion should be denied.

Defendant has filed a Reply, arguing that Plaintiff's Response fails to substantively address Defendant's legal arguments supporting dismissal. Docket No. 23. In countering Plaintiff's negligence assertions, Defendant further replies that "a negligence tort claim against an employer arising out of and in the course of a plaintiff's employment – including a claim of negligent hiring, supervision, and retention premised on alleged discrimination or endangerment by a supervisor or coworker – is precluded by the exclusive remedy provision of the TWCA." *Id.* With regard to Plaintiff's defamation claim, Defendant notes that Plaintiff concedes that he "is not presenting state law violations," and since there is no federal cause of action for "defamation, libel, or slander" under 28 U.S.C. § 4101, "Plaintiff has admittedly not asserted a viable defamation claim." *Id.* Turning to Plaintiff's disability discrimination and retaliation claim, Defendant argues that nothing in Plaintiff's Response addresses Defendant's contention that

"Plaintiff failed to administratively exhaust his ADA claims or plead the necessary facts to assert a plausible cause of action under the ADA, ADEA, or Title VII," and that in "failing to meaningfully respond, Plaintiff has conceded that he has not stated any viable claim and that dismissal is proper." *Id.*

Defendant further replies that Plaintiff cites inapplicable cases and the incorrect standard of review, and that, while pro se plaintiffs are entitled to leniency in their pleadings, they must still satisfy the *Iqbal* and *Twombly* pleading requirements. *Id*. Defendant argues that Plaintiff has failed to do so.

Plaintiff, *pro se*, filed this action pursuant to Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e et seq.; the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. § 12111, et seq.; and the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 623, et seq., alleging that Defendant discriminated against him on account of his "age, race, disability, and retaliation." Docket No. 15. Specifically, Plaintiff's Amended Complaint avers six causes of action: (1) violations of Title VII; (2) "Negligent Retention & Supervision"; (3) violations of the ADA; (4) "Slander, Libel, Defamation"; (5) "Age Discrimination in the alternative"; and (6) "Hostile Work Environment." *Id.*

Plaintiff filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") alleging discrimination based upon his "race, retaliation, and age." Docket No. 1-1. Plaintiff received his Right to Sue letter, and he thereafter timely-filed the instant action. *Id.* Plaintiff seeks compensatory and punitive damages, declaratory relief, and Plan benefits, as well as costs, fees, and pre- and post-judgment interest. Docket No. 15.

For the reasons discussed below, the undersigned finds that Plaintiff's Amended Complaint fails to state a claim upon which relief can be granted, such that this case should be

dismissed. Accordingly, the undersigned recommends that Defendant's Motion to Dismiss (Docket No. 16) be **GRANTED**, and that this action be **DISMISSED WITH PREJUDICE**.

## II.      FACTUAL ALLEGATIONS OF PLAINTIFF'S AMENDED COMPLAINT

Plaintiff alleges that he is a black male over the age of 40, who, on September 13, 2021, was hired as a C Crew Building Department Group Leader reporting to Derek Cotes, a white male over the age of 40. Docket No. 15, ¶¶ 12, 13. Plaintiff avers that he was hired with a 90-day probationary period and medical insurance coverage starting 31 days after employment. *Id.*, ¶13. Plaintiff further avers that he became eligible for short term disability benefits on October 14, 2021. *Id.*, ¶ 14.

Plaintiff states that on two occasions in October 2021, he "suffered slanderous comments" from Prince McGill, a black male under the age of 40 and D Crew Associate, including, "you deliberately made an error with my time because Goldwire told me."[1] *Id.*, ¶15. Plaintiff states that he reported the "slanderous comments" to his supervisor. *Id.*

Plaintiff further states that, in October 2021, he sent Mr. Cotes an email describing Saymantha Grotchel's (a white female under the age of 30) work ethic as a C Crew Team Leader. *Id.*, ¶16. Plaintiff avers that Mr. Cotes showed the email to "LT B crew group leader, Black female over 40, humiliating and bullying Plaintiff during morning shift exchange. Cotes perniciously laughing at the use of words, saying, 'he had to ask his wife to read because of the large words.'" *Id.*

Plaintiff continues, in "October 2021, Plaintiff had meeting with Anthony Coleman HRM Unit Manager, white male, over 40. Concerning Prince McGill admitting to lying to Plaintiff witnessed by Mathew Goldwire, D. Crew GL, heard the admission of slanderous comment.

---

[1] "Goldwire" is Mr. McGill's direct  Group Leader.

4

Including reporting hostile work environment discussed about Derek Cotes advertisement of personal email distributed in Building Group Leaders office at 6pm." *Id.*, ¶17.

Plaintiff avers that, on November 1, 2021, he emailed Mr. Cotes a chronological list of threatening encounters with Aaron Cunningham, a black male under the age of 40. *Id.*, ¶18. Plaintiff states that he was "vociferous after reminded of company policies. Incident involved, asking him to remove his hoodie a second time. He wore the hoodie covering his head, and not his first threatening outburst while employed." *Id.*

Plaintiff alleges that, on November 1, 2021, Plaintiff was "held prisoner by Defendants Derek Cote, John Meisenbach, Senior Production Manager, and Brad Johnson, Unit Manager in management office for over an hour."[2] *Id.*, ¶19. Plaintiff avers that he could not leave until he answered their questions "satisfactorily." *Id.* He contends that it "was more of a police interrogation to make the victim the criminal. Plaintiff felt embarrassed, humiliated, and discriminated [against] while [being] confronted by three white men." *Id.* Plaintiff states that he "followed protocol since this was the second threatening encounter with Aaron Cunningham," and he notes that "John sat to left and Dereck to right while Brad was behind a glass partition. Resembled a scene from Law and Order the TV show." *Id.* Plaintiff avers the "pernicious interrogation included incidents not entered in Unsigned Discipline Reprimand." *Id.*

Plaintiff states, "Defendant's Discipline Reprimand Memorandum of Record perfunctory to Plaintiff's email sent to Derek Cotes disputes ambiguous events, company policies, and rules," and he continues, "Defendant's Reprimand Memorandum of Report, 'The perception of how we treat associates on the floor is key to our success,'" to which Plaintiff replies "the demographics of the work force does not reflect diversity in management positions." *Id.* ¶¶20, 21.

---

[2] Despite Plaintiff's label to the contrary, Derek Cote, John Meisenbach, and Brad Johnson are not Defendants in the instant action.

Plaintiff additionally avers as follows:

22. September 2021, October 2021, and November 2021, Prior efforts to phone Dereck Cotes or management concerning machinery down time, quality issues or safety incidents have never received a reply.

23. November 2021, Defendant's Unsigned Discipline Reprimand Memorandum of Record for Aaron Cunningham incident (Ex. 4)

24. November 8, 2021, Plaintiff's email sent to Defendant Tsutae Sowell Human Resources Team Manager, Korean, over 40 is Robbie Collier's immediate supervisor. Plaintiff sent email disputing unsigned Discipline Reprimand Memorandum of Aaron Cunningham incident (Ex. 5, 6)

25. Defendant Tsutae Sowell ordered matter reinvestigated (Ex. 5, 6)

26. November 2021 Plaintiff's Disputing Memorandum of Report (Ex. 5a)

**Week of 11/29/21** (Ex. 6)

27. December 2021 sent Defendant Tsutae Sowell 2nd email asking the status of Plaintiff's Disputing Memorandum of Aaron Cunningham excoriating Defendants Memorandum (Ex. 5, 6)

28. On December 2, 2021, Plaintiff worked on D Crew covering for Goldwire, GL absence. Violating Defendants Memorandum for Record, "In order to create an environment that both you and Aaron are comfortable with we decided to separate both you and Aaron … Aaron will be moved to a different team." On December 2, 20121, Plaintiff put in a hostile situation. Plaintiff's safety ignored after Hankook made the policy. (Ex. 4)

29. On December 4, 2021, Plaintiff reported to Defendant Derek Cote, a BATTERY committed by Global Master on Mario Richards, Black male under 40. Sent picture of the assailant to Defendant. The Global Master slapped Mario's arm off the control panel on machine 1302, (Ex. 6)

30. Sang, Korean under 40, commented to Plaintiff in a superiority manner, "6 m's don't exist," referring to a prior discussion of his lack of knowledge of only 4 m's. Sang made personal attack because Plaintiff disagreed with the Korean Global Master's staffing plans.

31. Lee, Korean under 40, told [Plaintiff] to "shut up and listen," whereas Plaintiff ended the conversation and walked away. Again, Lee's confrontation happened because Plaintiff disagreed with the Global Master's staffing plan. M, Korean, Global Master repeatedly complained Antoine Ray, (Black male) was standing with arms folded while machine

6

was running. However, no complaints of Will (White male) standing while machine was running. Both Antione and Will are Team Leaders (TL) on C Crew.

32.     Defendant Sang and Lee demanded Plaintiff acquiescent to their rhetorical superiority.

33.     Plaintiff submitted to management statistical information as to root cause of production issues disputing Global Masters' unscientific approach (Ex. 6)

*Id.*, ¶¶ 22-33.

Plaintiff states that his 90-day probationary employment period ended on December 12, 2021, and he filed a short-term disability claim with Defendant's insurance carrier the following day. *Id.*, ¶¶ 34, 35. Plaintiff avers that Defendant received his doctor's "note of off work notice with medical restriction from December 13, 2021, to February 13, 2022. *Id.*, ¶ 36. Plaintiff alleges that on December 15, 2021, Defendant's Payroll & Benefits Coordinator, Melissa Smith, a white female under 40, "demand[ed] submission of Medical Leave of Absence (MLOA) form, and later pontificated Plaintiff return to work before doctor's restrictions ended." *Id.*, ¶ 37.

Plaintiff avers that he filed his EEOC Charge of Discrimination in January 2022 and soon thereafter received his Notice of Right to Sue. *Id.*, ¶¶ 38, 39.

Plaintiff alleges that after he filed his Charge of Discrimination with the EEOC, Melissa Smith and Robbie Collier required Plaintiff to return to work before he was released by the doctor "because of 30-day medical leave of absences expired." *Id.*, ¶ 40. Plaintiff avers that Defendant put him in "direct threat of harm" because his doctor's stated return to work date was February 3, 2022. *Id.*

Plaintiff further avers that Defendant "demanded" that he perform "unsafe and dangerous acts." *Id.*, ¶ 42. Specifically, Plaintiff argues that, on December 2, 2021, Plaintiff was put "in hostile unsafe working condition with known threat (Aaron Cunningham), and that on January

13, 2022, Robbie Collier "demanded" that Plaintiff's doctor remove Plaintiff's medical restrictions. *Id.*

Plaintiff avers that he was terminated on January 20, 2022 "because Dr. Hopkins would not release [him] to return to work at Hankook Tire." *Id.*, ¶44. Plaintiff states that Robbie Collier "made smug remarks 'I am not a doctor,' while ending Plaintiff's employment." *Id.*, ¶45.

Plaintiff avers that Melissa Smith cancelled his medical insurance "before job termination." *Id.*, ¶ 41.

### III.    LAW AND ANALYSIS

#### A.    Motion to Dismiss - Fed. R. Civ. P. 12(b)(6)

Fed. R. Civ. P. 12(b)(6) provides that a claim may be dismissed for failure to state a claim upon which relief can be granted.  In order to state a claim upon which relief can be granted, a complaint must contain either direct or inferential allegations respecting all material elements to sustain a recovery under some viable legal theory. *Mezibov v. Allen*, 411 F. 3d 712, 716 (6th Cir. 2005).  Conclusory allegations or legal conclusions masquerading as factual allegations will not suffice.  *Id.*

The court will construe the complaint in the light most favorable to the nonmoving party, accept its allegations as true, and draw all reasonable inferences in favor of the nonmoving party. *See Directv, Inc. v. Treesh*, 487 F. 3d 471, 476 (6th Cir. 2007); *Inge v. Rock Fin. Corp.*, 281 F. 3d 613, 619 (6th Cir. 2002).  The Federal Rules of Civil Procedure require only that the pleadings contain "a short and plain statement of the claim" that will provide fair notice of what the claims are and the grounds upon which they rest.  *See* Fed. R. Civ. P. 8.

A complaint containing a statement of facts that merely creates a suspicion of a legally cognizable right of action is insufficient. *Bell Atlantic Corp. v. Twombly,* 127 S. Ct. 1955, 1965

(2007). The "[f]actual allegations must be enough to raise a right to relief above the speculative level"; they must "state a claim to relief that is plausible on its face." *Id*. At 1965, 1974. *See also, Ass'n of Cleveland Fire Fighters v. City of Cleveland*, 502 F. 3d 545, 548 (6th Cir. 2007).

Moreover, the United States Supreme Court has addressed the current appropriate standard that must be applied in considering a Motion to Dismiss for failure to state a claim. *See Ashcroft v. Iqbal*, 556 U.S. 662 (2009). The *Iqbal* Court stated in part as follows:

> Two working principles underlie our decision in *Twombly*. First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of the cause of action, supported by mere conclusory statements, do not suffice . . . . Rule 8 marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for plaintiff armed with nothing more than conclusions. Second, only a complaint that states a plausible claim for relief survives a motion to dismiss . . . . Determining whether a complaint states a plausible claim for relief will, as the Court of Appeals observed, be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. . . . But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged - but it has not "show[n]" - "that the pleader is entitled to relief."

556 U.S. at 678-79 (citations omitted).

## B. Title VII of the Civil Rights Act of 1964

### i. Generally

Title VII of the Civil Rights Act of 1964 ("Title VII") protects employees from discrimination on the basis of an individual's race, color, religion, sex, or national origin, and provides, in part:

It shall be an unlawful employment practice for an employer--

> 1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin; or

9

2)      to limit, segregate, or classify his employees or applicants for employment in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's race, color, religion, sex, or national origin.

42 U.S.C. § 2000e-2.

Federal courts do not have jurisdiction to hear Title VII claims unless the claimant explicitly files the claim in an EEOC charge or the claim can reasonably be expected to grow out of the EEOC charge. *Abeita v. TransAmerica Mailings, Inc.*, 159 F. 3d 246, 254 (6th Cir. 1998), *citing Ang v. Procter & Gamble Co.,* 932 F. 2d 540, 544-45 (6th Cir. 1991). Thus, as a prerequisite to bringing a Title VII discrimination claim in federal court, a claimant is required to file a charge of discrimination or retaliation with the EEOC and is precluded from seeking judicial review until the Commission has made a final disposition of his claim. 42 U.S.C. § 2000e-5. *See also, United Air Lines, Inc. v. Evans*, 431 U.S. 553, 554, 97 S. Ct. 1885, 1887, 52 L. Ed. 2d 571 (1977). The wording of the allegations in the EEOC charge does not, however, have to be exact or all-encompassing; rather, the court may consider allegations not explicitly stated in the EEOC charge if those allegations could reasonably be expected to grow out of the charge of discrimination. *Tipler v E. I. du Pont de Nemours & Co.*, 433 F. 2d 125, 131 (6th Cir. 1971), *citing Sanchez v. Standard Brands, Inc.,* 431 F. 2d 455, 465-66 (5th Cir. 1970); *King v. Georgia Power Co.*, 295 F. Supp. 943 (N.D. Ga. 1968).

In order to establish a prima facie case of discrimination in violation of Title VII, a plaintiff must prove that:

1)      he is a member of a protected class;

2)      he was qualified for his job and performed it satisfactorily;

3)      despite his qualifications and performance, he suffered an adverse employment action; and

10

4)      that he was replaced by a person outside the protected class or was treated less
        favorably than a similarly situated individual outside his protected class.

*Johnson v. University of Cincinnati*, 215 F. 3d 561, 572-73 (6th Cir. 2000), *citing McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973).[3]

A plaintiff may establish a claim of discrimination under Title VII either by introducing direct evidence of discrimination, or by proving circumstantial evidence that would support an inference of discrimination. *Johnson v. Univ. of Cincinnati*, 215 F. 3d 561, 572 (6th Cir. 2000), *citing Kline v. Tennessee Valley Auth.*, 128 F. 3d 337, 348 (6th Cir.1997). "The direct evidence and the circumstantial evidence paths are mutually exclusive; a plaintiff need only prove one or the other, not both." *Id.*

Under the direct evidence approach, once the plaintiff introduces evidence that the employer terminated him because of his protected status, the burden of persuasion shifts to the employer to prove that it would have terminated the plaintiff even had it not been motivated by discrimination. *Johnson*, 215 F. 3d at 572, *citing Manzer v. Diamond Shamrock Chemicals Co.*, 29 F. 3d 1078, 1081 (6th Cir. 1994), *citing Price Waterhouse v. Hopkins*, 490 U.S. 228, 244-45, 109 S. Ct. 1775, 104 L. Ed. 2d 268 (1989).

If the plaintiff lacks direct evidence of discrimination, the circumstantial evidence approach is used and the *McDonnell Douglas-Burdine* tripartite test is employed. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973), as later clarified by *Texas Dep't of Community Affairs v. Burdine,* 450 U.S. 248, 101 S. Ct. 1089, 67 L. Ed. 2d 207 (1981). The *McDonnell Douglas-Burdine* tripartite test requires the plaintiff to

---

[3] An adverse employment action is one that causes a materially adverse change in a term of employment, such as significantly diminished responsibilities, termination, a demotion evidenced by a decrease in wage or salary, a less distinguished title, or a material loss of benefits. *See Kocsis v. Multi-Care Mgmt.*, 97 F. 3d 876, 885-86 (6th Cir. 1996).

11

first establish a prima facie case of discrimination. *Id.* If the plaintiff is able to do so, a mandatory presumption of discrimination is created and the burden shifts to the defendant to articulate some legitimate, nondiscriminatory reason for the employee's rejection. *Id.* If the defendant carries this burden, the plaintiff must then prove that the proffered reason was actually pretextual. *Id.* The plaintiff may establish pretext by showing that, 1) the stated reasons had no basis in fact; 2) the stated reasons were not the actual reasons; or 3) the stated reasons were insufficient to explain the defendant's action. *Id. See also, Cicero v. Borg-Warner Automotive, Inc.,* 280 F. 3d 579, 589 (6th Cir. 2002). "A reason cannot be proved to be 'a pretext for discrimination' unless it is shown both that the reason was false, and that discrimination was the real reason." *St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 515, 113 S. Ct. 2742, 125 L. Ed. 2d 407 (1993).

    **ii.    Hostile Work Environment**

In order to establish a prima facie case of hostile work environment under Title VII, a plaintiff must prove that:

    1)    he is a member of a protected class;

    2)    he was subject to unwelcome harassment;

    3)    the harassment was based on his protected class; and

    4)    the harassment created a hostile work environment.

*Clark v. United Parcel Service, Inc.*, 400 F. 3d 341, 347 (6th Cir. 2005).

A hostile work environment exists when "the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Harris v. Forklift Sys., Inc.,* 510 U.S. 17, 21 (1993). The environment must not only be objectively hostile but also one

12

that a reasonable person would find hostile or abusive. *Id.* at 21-22.

### iii.  Retaliation and Retaliatory Discharge

In order to establish a prima facie case of retaliation under Title VII, a plaintiff must prove that:

1)      he engaged in activity protected by Title VII;

2)      his exercise of the protected activity was known by the   defendant;

3)      thereafter, the defendant took an action that was materially adverse to the plaintiff; and

4)      a causal connection exists between the protected activity and the materially        adverse action.

*Laster v. City of Kalamazoo*, 746 F. 3d 714, 730 (6th Cir. 2014).

### C.      Americans with Disabilities Act ("ADA")

### i.      Generally

The Americans with Disability Act of 1990 ("ADA"), 42 U.S.C. § 12111, et seq., protects employees from discrimination based on their disabilities, and provides, in part:

No covered entity shall discriminate against a qualified individual with a disability because of the disability of such individual in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment.

42 U.S.C. § 12112.

In order to sustain an ADA claim, an employee must first make out a prima facie case of discrimination by establishing that:

1)      he is an individual with a disability;

2)      he is otherwise qualified for the position, with or without reasonable accommodation;

3)      he suffered an adverse employment decision;

13

4)      the employer knew or had reason to know of the plaintiff's disability; and

5)      the position remained open while the employer sought other applicants, or
the disabled individual was replaced.

*Monette v. Electronic Data Sys. Corp.*, 90 F. 3d 1173, 1186 (6th Cir. 1996). *See also* 42 U.S.C.
§§ 12111 and 12112.

### ii.      Retaliation

The ADA protects employees against retaliation for opposing activities that are otherwise

unlawful under the ADA. Specifically, the ADA's anti-retaliation provision states:

No person shall discriminate against any individual because such individual has
opposed any act or practice made unlawful by this chapter or because such
individual made a charge, testified, assisted, or participated in any manner in an
investigation, proceeding, or hearing under this chapter.

42 U.S.C. § 12203.

### iii.     Standard

Claims brought under the ADA are evaluated under the same *McDonnell Douglas-

Burdine* tripartite test utilized in Title VII cases. The *McDonnell Douglas-Burdine* tripartite test

requires the plaintiff to first establish a prima facie case of discrimination. If the plaintiff is able

to do so, a mandatory presumption of discrimination is created and the burden shifts to the

defendant to articulate some legitimate, nondiscriminatory reason for the employee's rejection.

If the defendant carries this burden, the plaintiff must then prove that the proffered reason was

actually pretextual. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S. Ct. 1817, 36 L.

Ed. 2d 668 (1973), as later clarified by *Texas Dep't of Community Affairs v. Burdine,* 450 U.S.

248, 101 S. Ct. 1089, 67 L. Ed. 2d 207 (1981). The plaintiff may establish pretext by showing

that, 1) the stated reasons had no basis in fact; 2) the stated reasons were not the actual reasons;

and 3) that the stated reasons were insufficient to explain the defendant's action. *Id.* "A reason

14

cannot be proved to be 'a pretext for discrimination' unless it is shown both that the reason was false, and that discrimination was the real reason." *St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 515, 113 S. Ct. 2742, 125 L. Ed. 2d 407 (1993).

**D.    Age Discrimination in Employment Act ("ADEA")**

**i.    Generally**

The Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 623, et seq., protects employees from discrimination based on their age, and provides, in part:

(a) Employer practices.  It shall be unlawful for an employer-

> 1)    to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age;
>
> 2)    to limit, segregate, or classify his employees in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's age; or
>
> 3)    to reduce the wage rate of any employee in order to comply with this chapter.

A prima facie case of age discrimination under the ADEA requires the plaintiff to demonstrate that:

> 1)    he is a member of a protected class (i.e. was at least forty (40) years of age at the time of the alleged discrimination);
>
> 2)    he is qualified for the position;
>
> 3)    he suffered an adverse employment action; and
>
> 4)    he was treated differently than, or replaced by, a younger, similarly situated        person outside of the protected class.

*Policastro v. Northwest Airlines, Inc.*, 297 F. 3d 535, 538-539 (6th Cir. 2002), *citing Kline*, 128 F. 3d at 349.

### ii. Standard

Age discrimination claims brought pursuant to the ADEA are likewise evaluated under the *McDonnell Douglas-Burdine* tripartite test discussed above. *Wexler*, 317 F. 3d at 574, *citing Ercegovich v. Goodyear Tire & Rubber Co.*, 154 F. 3d 344, 350 (6th Cir. 1998).

### E.     Tennessee Workers' Compensation Act ("TWCA")

The Tennessee Workers' Compensation Act ("TWCA"), Tenn. Code. Ann. § 50-6-108(a), et seq., provides the exclusive remedy for an employee who is injured during the course and scope of his employment. *See Valencia v. Freeland & Lemm Constr. Co.,* 108 S.W.3d 239, 242 (Tenn. 2003). As such, an employee who is injured during the course and scope of his employment is precluded from seeking tort damages for the injury. *Id. See also Young v. UPS*, 992 F. Supp. 2d 817, 840 (M.D. Tenn. 2014).

### F.     The Case at Bar

Plaintiff brings this action pursuant to Title VII, the ADA, and the ADEA. Docket No. 16. Title VII, the ADA, and the ADEA are each evaluated under the *McDonnell Douglas-Burdine* tripartite test discussed above. *Wexler*, 317 F. 3d at 574. While Plaintiff appeared in his Amended Complaint to also assert claims for negligence, slander, libel, and defamation, Plaintiff, in his Response, states that he is "not presenting state law violations." Docket No. 20. Because Plaintiff concedes that he is "not presenting state law violations," to the extent Plaintiff initially averred such claims, those claims should be dismissed.

Further, Plaintiff cites to 28 U.S.C. § 4101 as the jurisdictional basis for his claims. Docket No. 15, ¶ 83. However, that statute merely defines "defamation" in the context of when a federal court may recognize a foreign defamation judgment. It is not itself a private right of action conferring federal question jurisdiction.

16

Turning to Plaintiff's federal claims, although Plaintiff avers that Defendant discriminated against him in violation of the ADA, Plaintiff's EEOC Charge of Discrimination alleges discrimination solely on the basis of race, retaliation, and age; it does not allege discrimination on the basis of disability. *See* Docket No. 1-1. As discussed above, federal courts do not have jurisdiction to hear these claims unless the claimant explicitly files the claim in an EEOC Charge or the claim can reasonably be expected to grow out of the EEOC Charge. *TransAmerica Mailings, Inc.*, 159 at 254, *citing Procter & Gamble Co.,* 932 at 544-45. Because Plaintiff did not allege discrimination on the basis of disability in his EEOC Charge, and no such claim could be reasonably expected to grow out of the EEOC Charge filed, Plaintiff's ADA claims must be dismissed.[4]

With regard to Plaintiff's Title VII claims, as discussed above, in order to establish a prima facie case of discrimination in violation of Title VII, Plaintiff must allege that he is a member of a protected class; that he was qualified for his job; that despite his qualifications and performance, he suffered an adverse employment action; and that he was replaced by a person outside the protected class or was treated less favorably than a similarly situated individual outside his protected class. Plaintiff has failed to do so.

Specifically, as can be seen in the recounted allegations of Plaintiff's Amended Complaint, *supra*, Plaintiff fails to plead facts indicating preferential treatment or discriminatory animus. *See* Docket No. 15. Plaintiff's proffered allegations pertain to various interactions with coworkers, but other than identifying the race of each person, none of the interactions indicate

---

[4] Moreover, Plaintiff has completely failed to even allege that he suffers from a covered disability, much less identify what that disability is, whether he can perform the essential functions of his job with or without an accommodation, what protected activity he engaged in, or what adverse action he suffered as a result of his disability or protected activity. Absent such, Plaintiff simply cannot prevail on an ADA claim, and his ADA claim should be dismissed.

17

any preferential treatment or discriminatory animus. The absence of allegations regarding each of the requisite elements is fatal to Plaintiff's discrimination claim. Accordingly, Defendant's Motion to Dismiss should be granted with regard to this claim.

With regard to Plaintiff's ADEA claim, as recounted above, in order to establish a prima facie case of age discrimination in violation of the ADEA, Plaintiff must allege that he is a member of a protected class (*i.e.* was at least 40 years of age at the time of the alleged discrimination); he is qualified for the position; he suffered an adverse employment action; and he was treated differently than, or replaced by, a younger, similarly situated person outside of the protected class. Plaintiff has likewise failed to do so.

As can be seen in the recounted allegations of Plaintiff's Amended Complaint*, supra,* other than identifying whether someone was over 40 or under 40, Plaintiff makes no allegation that age had any impact on Defendant's decision to terminate his employment. In fact, Plaintiff explicitly avers that he was terminated on January 20, 2022 "because Dr. Hopkins would not release [him] to return to work at Hankook Tire." Docket No. 15, ¶44. Because Plaintiff has failed to allege any connection between his age and his termination, and because Plaintiff's own averment establishes that his termination was related to his doctor not releasing him to return to work, Plaintiff cannot sustain his claim under the ADEA. Accordingly, Defendant's Motion to Dismiss should be granted with regard to this claim.

Turning to Plaintiff's hostile work environment claim, as noted above, in order to state a claim for hostile work environment under Title VII, Plaintiff must allege that he was a member of a protected class; that he was subjected to unwelcome harassment; that the harassment was based on his protected class; and that the harassment created a hostile work environment. Also as discussed, the hostility and abuse must be sufficiently severe or pervasive that it meets both

18

subjective and objective standards. The allegations of Plaintiff's Amended Complaint, recounted above, aver sporadic interactions with coworkers, none of which indicate frequent, severe, or pervasive harassment, and none of which indicate any connection to his race. The absence of such is fatal to Plaintiff's hostile work environment claim. Accordingly, Defendant's Motion to Dismiss should be granted with regard to this claim.

Finally, with regard to Plaintiff's allegations of retaliatory conduct, as noted, in order to prevail on a claim of retaliation, Plaintiff must allege that he engaged in protected activity; that Defendant knew of his exercise of such protected activity; that thereafter, Defendant took a materially adverse action toward Plaintiff; and that a causal connection exists between the protected activity and the materially adverse action.

As an initial matter, the Amended Complaint sets forth several causes of action, none of which include a specific claim for retaliation. Docket No. 15. As an attachment to his original Complaint, Plaintiff filed a copy of the charge of discrimination that he brought with the EEOC. Docket No. 1-1, pp. 2-3. In that document, Plaintiff assert that he has "made Management and HR aware of a few other subordinates who have violated company performance and safety policies" and that he "was retaliated against for enforcing respondent's policies and procedures against Mr. Cunningham and given a written memorandum for record." *Id.*. He further asserts he was "subjected to ongoing retaliation such as: once forced to work on D shift with Mr. Cunningham who is an unstable and unpredictable subordinate and HR is not responding to my new complaints." Plaintiff further asserts that he was "retaliated against because of my race (black)." *Id.*

Based upon the silence in the Amended Complaint and the substance of the charge with the EEOC, it is not clear that Plaintiff engaged in a protected activity. As noted, Plaintiff

characterized his complaints as concerns over "subordinates who have violated company performance and safety policies" and enforcing "policies and procedures" against other employees. *Id.* To the extent that Plaintiff's recitation of events suggesting that unpleasant actions occurred after he lodged various complaints about co-workers is intended to constitute Plaintiff's retaliation claim, none of the actions of which Plaintiff complains constitutes the requisite adverse employment action, as defined *supra*.[5] Moreover, Plaintiff's Amended Complaint is silent with regard to allegations supporting a causal connection between filing his EEOC Charge and being terminated because his doctor would not clear him to return to work. Because Plaintiff has failed to sufficiently plead the requisite elements of this claim, it should likewise be dismissed.

## IV. CONCLUSION

For the reasons discussed above, the undersigned finds that Plaintiff's Amended Complaint fails to state a claim upon which relief can be granted, such that this case should be dismissed. Accordingly, the undersigned recommends that Defendant's Motion to Dismiss (Docket No. 16) be **GRANTED**, and that this action be **DISMISSED WITH PREJUDICE**.

Under Rule 72(b) of the Federal Rules of Civil Procedure, any party has fourteen (14) days after service of this Report and Recommendation in which to file any written objections to this Recommendation with the District Court. Any party opposing said objections shall have fourteen (14) days after service of any objections filed to this Report in which to file any response to said objections. Failure to file specific objections within fourteen (14) days of service of this Report and Recommendation can constitute a waiver of further appeal of this

---

[5] As noted, an adverse employment action is one that causes a materially adverse change in a term of employment, such as significantly diminished responsibilities, termination, a demotion evidenced by a decrease in wage or salary, a less distinguished title, or a material loss of benefits. *See Kocsis v. Multi-Care Mgmt.*, 97 F. 3d 876, 885-86 (6th Cir. 1996).

20

Recommendation. *See Thomas v. Arn,* 474 U.S. 140, 106 S. Ct. 466, 88 L. Ed. 2d 435 (1985), *reh'g denied*, 474 U.S. 1111 (1986); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72.

**JEFFERY S. FRENSLEY**
**United States Magistrate Judge**